UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 04-CR-20038-05

v.                                            Honorable Thomas L. Ludington

SERGIO CORIA,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE WITH PREJUDICE**

On August 2, 2005, Defendant was indicted by a grand jury on one count of conspiracy to distribute and possess with intent to distribute methamphetamine. ECF No. 88. Defendant pled guilty and on January 5, 2018[1] was sentenced to 108 months imprisonment. ECF No. 660. Defendant is housed at Lompoc FCI.

Defendant filed a pro se motion to reduce his sentence due to the spread of COVID-19 on May 4, 2020. ECF No. 694. He also filed two letters dated June 23, 2020 (docketed on July 2, 2020) and June 26, 2020 (docketed July 5, 2020) inquiring as to the status of his May 4, 2020 motion. ECF Nos. 692, 693. Defendant's motion was denied. ECF No. 696. On September 17, 2020, Defendant, through counsel, filed a motion for compassionate release. ECF No. 704. The motion was denied without prejudice due to lack of exhaustion. ECF No. 706.

On December 10, 2020, Defendant, through counsel, refiled a motion for compassionate release. ECF No. 712. The Government filed a response. ECF No. 713. On December 30, 2020,

---

[1] "Once charged, Coria was released on bail and fled to Mexico where he remained for approximately 12 years. Eventually, the Mexican police arrested Coria, who was living under a false name, and turned him over to the FBI." ECF No. 713 at PageID.4576.

Defendant filed a motion to supplement the record. ECF No. 714. The Government also filed a notice of supplemental authority. ECF No. 716.

**I.**

The United States is facing an unprecedented challenge with the novel coronavirus ("COVID-19") pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized

> by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9. "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020).

On June 3 and June 25, 2020 Defendant requested compassionate release from the BOP due to the COVID-19 pandemic. ECF No. 712-2. The Warden denied his request on July 8, 2020. *Id.* Defendant has exhausted his administrative remedies.

**B.**

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant brings this Motion on his own behalf, § 1B1.13 is "inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 2020 WL 6817488, at *7. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See id.* at *2 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 2020 WL 6817488, at *2 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 2020 WL 6817488, at *2 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 2021 WL 50169, at *3. Under

the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[2] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at *4.

Defendant has tested positive twice for COVID-19. ECF No. 712 at PageID.4448–49. He suffers from tuberculosis, high cholesterol, type 2 diabetes, hypertension, and obesity. *Id.*; ECF No. 713 at PageID.4578. The CDC provides that type 2 diabetes and obesity are conditions that increase an individual's risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/9H9M-7YL6] (last visited January 22, 2021). In addition, hypertension may increase an individual's risk of severe illness. *Id.*

Defendant is currently housed in Lompoc FCI which has zero current inmate infections. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus [https://perma.cc/F7RY-6W2P] (last visited 1/22/2021). However, there are 658 inmates who have since recovered from COVID-19, including Defendant. *Id.* While there is no community spread among inmates at this time, Defendant is at high risk of severe illness from COVID-19 if he is re-diagnosed with the virus. Defendant has demonstrated that there are extraordinary and compelling reasons for his release.

---

[2] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 2021 WL 50169, at *4 n.1.

**C.**

As stated previously, there is no "applicable policy statement" in this case because Defendant, not the BOP, has moved for compassionate release. Consequently, step two of the § 3582(c)(1)(A) analysis is skipped, and the final issue is whether a sentence reduction is warranted by the applicable factors set forth in § 3553(a). *See Jones*, 2020 WL 6817488, at *9. The factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 2020 WL 6817488, at *10 (citations omitted).

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate

>that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at *11 (internal quotations and citations omitted).

Defendant's Motion focuses almost exclusively on his medical diagnoses, rather than the § 3553(a) factors. He argues that he "need[s] to assist his wife and children whose economic and emotional well being is very precarious due to the COVID-19 pandemic." ECF No. 712 at PageID.4451. Defendant includes a statement of his accomplishments, claims to have a low risk of recidivism, and states that prior to his arrest for the instant offense, he had no criminal history. He also explains that his family has "always been a large and important part of my life." ECF No. 712-3. Defendant further provides that he obtained his GED in prison, is working on three associate degrees, and has completed many construction projects while in custody. *Id.* He explains that even though he absconded for 12 years with minimal contact with his family, "[h]e is determined to meet his obligations for the crime he committed and move forward with becoming a model citizen." ECF No. 714 at PageID.4603.

In response, the Government highlights that Defendant absconded after he was arrested and spent 12 years in Mexico prior to pleading guilty to the instant offense. ECF No. 713. It also argues that Defendant "has served less than 4 years of his 10 year sentence." *Id.* at PageID.4596. Finally, it argues that Defendant is a "long time distributor of a large amount of methamphetamine across state lines and into the hands of a violent motorcycle gang that murdered one of its own members for acting as a confidential informant." *Id.*

Defendant's presentence report ("PSR") indicates that he has no criminal history besides the current offense. Additionally, the PSR indicates Defendant was unaware of the murder of a fellow gang member but notes that he is responsible for more than 1.5 but less than 5 kilograms of methamphetamine. Defendant's efforts to focus on his education, his good behavior the past four

- 7 -

years in custody, and his intention to spend more time with his family after release are to be commended. However, they do not negate the fact that he has served less than half of his sentence, that he has a documented history of being a flight risk by absconding for 12 years in a foreign country, and that he participated in a significant drug conspiracy. His behavior suggests that the remainder of his sentence should be served "to promote respect for the law" and "afford adequate deterrence." *See* 18 U.S.C. §§ 3553(a)(1)(A)–(B).

## II.

Accordingly, it is **ORDERED** that Defendant's Motions for Compassionate Release, ECF No. 712 and 714, are **DENIED WITH PREJUDICE**.


Dated: January 28, 2021                           s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge